IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

**FILED**

OCT 0 2 2023

CLERK ~~~~~~~~ DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | | |
|---|---|---|
| RICARDO GARCIA,<br>**Plaintiff,**<br><br>v.<br><br>REYES BERMEA, MARTIN CANTU,<br>CRISTIAN CAMPIRANO<br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Civil Action No.**<br>**DR-21-CV-004-AM/CW** |

## ORDER

Pending before the Court is the Report and Recommendation ("the Report") of the Honorable Collis White, United States Magistrate Judge. (ECF No. 40.) The Report recommends that the Court grant the Defendants' Motion for Summary Judgment. (ECF No. 34.) The Plaintiff filed timely objections to the Report. Upon a *de novo* review of the record, the Court **APPROVES and ADOPTS** the findings and conclusions contained in the Report and **GRANTS** the Defendants' Motion for Summary Judgment. (ECF No. 34.)

## I. BACKGROUND

### A. Relevant Factual Background

On February 13, 2019, at approximately 6:00 a.m., the Defendant Maverick County Sheriff's Deputy Reyes Bermea ("Bermea") responded to a 911 call in Eagle Pass, Texas in reference to a suspicious vehicle at an abandoned property. (ECF No. 34-1 at 2.) It was still dark at that time of the morning. (ECF No. 38.) When Bermea arrived on the scene, he noticed a pick-up truck at the referenced abandoned residence. (ECF No. 34-1 at 2.) The truck was parked at least 10 yards from the residence along a dirt road or driveway, where other homes are located. (ECF No. 38.) No fence, barrier restricting access to the area, or trespassing sign was apparent. (*Id.*) No measures were taken to conceal the truck, which was readily visible to the public from

an adjacent road, including when a school bus passed by. (*Id.*) The truck's engine was running and the Plaintiff Ricardo Garcia ("the Plaintiff") was seated in the driver's side. (ECF No. 34-1 at 2.)

Bermea approached the passenger side of the truck and attempted to speak with the Plaintiff, but the Plaintiff told Bermea to leave the property. (*Id.*) Bermea noticed the smell of alcohol emanating from the Plaintiff's vehicle, as well as an alcoholic beverage in the rear seat. (*Id.*) Bermea explained that he was responding to a call about a suspicious vehicle near an abandoned property. (*Id.*) The Plaintiff insisted that he was the owner of the property and that he had the right to be there. (ECF No. 38.) As Bermea spoke with the Plaintiff, Bermea did not make physical contact with the Plaintiff, remove his weapon, or otherwise act aggressively. (*Id.*)

After Bermea radioed the details of the initial contact with the Plaintiff, the Defendant Maverick County Sheriff's Deputy Cristian Campirano ("Campirano") arrived on the scene to help Bermea. (ECF No. 34-1 at 15.) Campirano arrived at about 6:30 a.m. and noticed the Plaintiff seated in the driver's seat of a parked vehicle. (ECF No. 38.) It was still dark outside. (*Id.*) As Campirano approached the driver's side door, he repeatedly ordered the Plaintiff to step out of the vehicle. (*Id.*) The Plaintiff refused to comply with the officer's directives. (*Id.*) Campirano then opened the driver's side door and again ordered the Plaintiff to step out of the vehicle, using a commanding tone of voice and gesturing with his hand. (*Id.*) The Plaintiff did not step out of the vehicle. (*Id.*) Instead, he continued to record the interaction on his cell phone and responded, "I'm not going to step out of the vehicle, sir" and "I'm in my property." (*Id.*)

Campirano asked the Plaintiff whether he had identification to verify the address of the home and gave additional commands to step out of the vehicle. (*Id.*) The Plaintiff responded, "You are violating my rights" and "I do not have to identify this is my property." (*Id.*) At this

point, Campirano had ordered the Plaintiff to step out of the vehicle approximately six times. (*Id.*) Campirano stated, "Either you come out, or we extract you out," and gave an additional command to step out of the vehicle. (*Id.*) The Plaintiff again refused, and Campirano placed his hand on the Plaintiff, who then recoiled and freed his arm from Campirano's grasp, at this point resisting detention. (*Id.*)

Campirano physically removed the Plaintiff from the vehicle, even though the Plaintiff repeatedly resisted Campirano's efforts. (*Id.*) With the assistance of Bermea, Campirano removed the Plaintiff from the vehicle and brought him to the ground. (*Id.*) As the officers attempted to subdue the Plaintiff, Campirano threatened to use mace to get the Plaintiff to comply. (*Id.*) The Plaintiff was handcuffed and placed under arrest for resisting arrest and driving while intoxicated. (*Id.*; ECF No. 34-1 at 2.) Campirano and Bermea then moved the Plaintiff to a standing position and placed him in the back seat of Campirano's police cruiser. (ECF No. 38.)

Other officers who had arrived on the scene, including the Defendant Maverick County Sheriff's Deputy Martin Cantu ("Cantu"), then searched the Plaintiff's truck. (*Id.*; ECF No. 35.) The search resulted in, among other things, three plastic baggies that had a substance that ultimately tested positive for cocaine and an open bottle of tequila. (ECF No. 34-1 at 20; ECF No. 35.) The Plaintiff avers that he was not intoxicated on the day of this incident. (ECF No. 36-3 at 1.)

According to the Plaintiff's complaint, the Plaintiff arrived at the residence to complete construction work and was waiting for his colleagues to arrive when the officers arrived. (ECF No. 13 at ¶ 7.) Martin Casares, Jr., a friend of the Plaintiff, avers that he resides at that property and that the Plaintiff had his permission to be on the property. (ECF No. 36-2 at 1.)

**B. Procedural Background**

3

The Plaintiff commenced this action *pro se* on February 12, 2021, when he filed a complaint against Bermea, Campirano, and Cantu (collectively, "the Defendants"). (ECF No. 1.) On March 26, 2021, the Plaintiff filed an amended complaint ("Complaint"), under 42 U.S.C. § 1983, alleging the Defendants violated his Fourth Amendment rights by: (1) unlawfully detaining him; (2) arresting him without probable cause; (3) using excessive force in arresting him; (4) unlawfully searching his vehicle; and (5) submitting a false probable cause affidavit to a magistrate judge. (ECF No. 13.)[1] On May 4, 2021, the Defendants filed a joint answer, denying most of the alleged facts from in the complaint, as well as each of the Plaintiff's causes of action. (ECF No. 24.) The Defendants assert the defense of qualified immunity, among other defenses. (*Id.*)

On September 28, 2022, after the parties completed discovery, the Defendants filed the joint motion for summary judgment presently before the Court. (ECF No. 34.) They assert a qualified immunity defense, arguing that they did not violate the Plaintiff's constitutional rights and that from a totality of the circumstances, their actions were objectively reasonable as a matter of law. (*Id.* at 3.) In support, the Defendants present video evidence and offense reports, and argue that the evidence shows the Plaintiff committed the following offenses: (1) criminal trespass pursuant to Tex. Pen. Code § 30.05; (2) interference with public duties of a peace officer pursuant to Tex. Pen. Code § 38.15; (3) failure to obey a lawful command of a police officer pursuant to Tex. Transp. Code § 542.501; (4) disorderly conduct pursuant to Tex. Pen. Code § 42.01; and (5) public intoxication pursuant to Tex. Pen. Code § 49.02. (*See id.* at 2-9.) They further argue that the Plaintiff disobeyed numerous lawful commands to exit the vehicle, and that Campirano and Bermea extracted him from the vehicle using the minimum amount of necessary and reasonable

---

[1] The Court liberally construes the Complaint because the Plaintiff filed *pro se*. *Erikson v. Pardus*, 551 U.S. 89, 94 (2007). Accordingly, the Plaintiff also appears to assert state law claims because he contends the Court has supplemental jurisdiction, as well as a failure to intervene claim. (ECF No. 13 at ¶¶ 6, 28-29.) But, the Report did not address state law claims or the failure to intervene claim. (ECF No. 40.)

force to place him under arrest. (*Id.* at 4.) The Defendants did not address the Plaintiff's claims pertaining to the unlawful search of his vehicle or the submission of a probable cause affidavit.

On October 11, 2022, the Plaintiff filed a response in opposition to the motion for summary judgment. (ECF No. 36.) He contends the summary judgment motion rests on a fundamental misstatement of material facts and claims there is no evidence he committed *any* crime. (*See id.*) In support, he notes that all charges against him were dropped for a lack of evidence and were not supported by probable cause. (*Id.* at 2.) He strongly denies that he was intoxicated, submitting a sworn declaration and asserting the Defendants did not discuss intoxication with him and did not ask him to submit to a breathalyzer or sobriety test. (*Id.* at 2-3, Ex. 3. at 1.) He also attaches an affidavit from the purported true owner of the property where the incident occurred, Martin Casares, Jr., who affirms that the Plaintiff was a longtime family friend who was allowed to stay at or visit the property any time. (*Id.*, Ex. 1.) Casares affirms that before the Plaintiff's arrest, they had discussed the Plaintiff "taking the mortgage or redemption of the property." (*Id.*) The Plaintiff also alleges the 911 call that brought the Defendants to the scene did not concern "criminal misconduct or erratic behavior." (*Id.* at 4.) Instead, according to the Plaintiff, the Defendants accosted him for not identifying himself while parked in his own vehicle. (*See id.*) The Plaintiff denies the list of additional crimes now alleged by the Defendants, asserting that each alleged crime also fails to satisfy probable cause. (*Id.* at 2-7.)

In the Plaintiff's response, he alleged, for the first time, that the Defendants accosted him and investigated him without reasonable suspicion or a warrant within the *curtilage* of an *inhabited* residence—a protected area under the Fourth Amendment. (*Id.* at 4, 7 (citing *Collins v. Virginia*, 138 S. Ct. 1663 (2018)).) He also newly alleged that when Campirano opened the door of the vehicle, he conducted an illegal search. (*Id.* at 4.) The Plaintiff attaches an affidavit, police report,

a picture of his truck on the "curtilage" of the home, police officer body cameras footage, and cell phone video footage taken from the Plaintiff's phone.

On October 18, 2022, the Defendants filed a sur reply to the Plaintiff's response to the motion for summary judgment. (ECF No. 37.) They claim that, in addition to the crimes alleged in the summary judgment motion, the Plaintiff also possessed an alcoholic beverage in his vehicle in violation of Texas Penal Code § 49.031. (*Id.* at 2.) According to the reply, police body camera footage shows the Plaintiff was in an "intoxicated state," that he "refused to obey lawful commands of the deputies," and that he "was aggressive towards the officers." (*Id.*) The Defendants allege they knew the Plaintiff "had been drinking by the smell of alcoholic beverages emitting from the vehicle as well as an open bottle of tequila." (*Id.*) They also cite to *Garcia v. Orta*, 47 F.4th 343 (5th Cir. 2022), which held that a vehicle was parked in a "public place" for purposes of public intoxication where the plaintiff was asleep in a running vehicle that was parked in a private driveway. (*Id.* at 3-4.) The Defendants did not address the Plaintiff's argument that he was parked within the curtilage of the home or that the home was occupied at the time.

The matter was referred to Judge White, who submitted the Report on August 18, 2023. (ECF No. 40.)  The Report recommended that this Court grant the Defendant's motion for summary judgment. (*Id.*) On each of the constitutional claims, the Report recommended that the Defendants are entitled to qualified immunity because they did not violate the Plaintiff's constitutional rights. (*Id.*) Thus, the Report recommended that each of the Plaintiff's claims failed to meet the first prong of qualified immunity. (*Id.*) The Report addressed the issue of curtilage, recommending that the Plaintiff did not present "any evidence that he was parked within the curtilage of a home, aside from an undated picture of a truck in front of a house that is in conflict with video evidence." (*Id.* at 12.) Additionally, the Report recommended that the seizure and

6

arrest were lawful. (*Id.* at 13-29.) The Report also recommended that the Defendants did not use excessive force. (*Id.* at 29-32.) Moreover, the Report recommended that the Defendants are entitled to summary judgment for the alleged unlawful search because the Defendants conducted an "inventory search," which is an exception to the Fourth Amendment's warrant requirement. (*Id.* at 32-34.) The Report also recommended that this Court find the Defendants did not submit false affidavits to a magistrate judge because it was objectively reasonable to believe there was probable cause to arrest the Plaintiff for at least three offenses. (*Id.* at 34-35.) The Plaintiff filed timely objections to the Report on September 1, 2023. (ECF No. 43.)

### III. STANDARDS OF REVIEW

A district court judge may designate a magistrate judge to submit "proposed findings of fact and recommendations for the disposition . . ." of a motion. 28 U.S.C. § 636(b)(1)(B). Federal law provides in relevant part:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. *Id.*

"Under the plain language of 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and all of the relevant cases, a district court must engage in *de novo* review where a party has objected to a magistrate's decision. However . . . the 'clearly erroneous, abuse of discretion and contrary to law' standard of review . . . is appropriate only where there has been no objection to the magistrate's ruling." *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989). "The clearly erroneous or contrary to law standard of review is highly deferential and requires the court to affirm the decision of the magistrate judge unless, based on the entire evidence, the court

reaches a definite and firm conviction that a mistake has been committed. The clearly erroneous standard does not entitle the court to reverse or reconsider the order simply because it would or could decide the matter differently." *Singh v. Wal-Mart Stores, Inc.*, No. 18-CV-1120, 2021 WL 706774, at *1 (W.D. Tex. Feb. 23, 2021); *see also United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948); *Guzman v. Hacienda Recs. & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015).

Frivolous, conclusory, or general objections can be ignored. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987), *overruled on other grounds by Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996), *abrogated on other grounds by* 28 U.S.C. § 636(b)(1). If a party fails to timely file written objections to the report and recommendation, that party cannot obtain appellate review of unobjected-to proposed factual findings and legal conclusions that the district court accepts. *Wallace v. Mississippi*, 43 F.4th 482, 495 (5th Cir. 2022). Arguments that are raised for the first time after a report and recommendation is filed are generally waived unless they concern subject matter jurisdiction. *See, e.g., Firefighters' Ret. Sys. v. EisnerAmper, L.L.P.*, 898 F.3d 553, 559 (5th Cir. 2018); *Star v. Sec'y of U.S. Dep't of Homeland Sec.*, No. 19-CV-053-DC, 2021 WL 8055635, at *3 (W.D. Tex. Feb. 18, 2021) ("Because a challenge to the Court's subject matter jurisdiction may never be forfeited or waived, the Court must consider [the Defendant's] new argument regarding subject matter jurisdiction.").

Federal Rule of Civil Procedure 56 allows a party to seek summary judgment. Fed. R. Civ. P. 56. "Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 478 (5th Cir. 2002) (quoting Fed.

R. Civ. P. 56(c)).  "A genuine issue of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party." *Id.*  "We must view the facts and inferences to be drawn therefrom in the light most favorable to the non-moving party." *Id.*

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Evidence presented at the summary judgment stage need not be in admissible form. *Id.* 56(c)(2).  However, the "party submitting the evidence must show that it will be possible to put the information into an admissible form." *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 522 (5th Cir. 2021) (quotation marks, citation, and alterations omitted).  "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).

"Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene . . . . A court . . . need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider the facts in the light depicted by the videotape." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (citations and quotation marks omitted).  If video evidence is inconclusive, the ordinary summary judgment standard applies.  *Boyd v. McNamara*, 74 F.4th 662, 665 (5th Cir. 2023).

Federal law "provides a private right of action against parties acting under color of any statute, ordinance, regulation, custom, or usage, of any State to redress the deprivation of rights secured by the United States Constitution or federal law." *Bauer v. Texas*, 341 F.3d 352, 357 (5th

Cir. 2003) (citing 42 U.S.C. § 1983) (quotation marks omitted). "Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights." *Id.* "To prevail on a section 1983 claim, the plaintiff must show that: 1) the offending conduct was committed by a person acting under color of state law; and 2) the conduct deprived the plaintiff of rights secured by the Constitution or federal law." *Id.*

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks and citation omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (quotation marks and citation omitted).

Qualified immunity applies only if the plaintiff establishes that (1) a constitutional right was violated and (2) "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232. The order of the qualified immunity analysis depends on the Court. *Id.* at 242. If the plaintiff fails to establish either element, an officer is immune from suit. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson*, 555 U.S. 223. The Court analyzes each defendant's entitlement to qualified immunity separately. *Carroll v. Ellington*, 800 F.3d 154, 174 (5th Cir. 2015). "When an official raises qualified immunity on summary judgment, . . . the plaintiff bears the burden of showing that the defense does not apply." *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020).

## IV. ANALYSIS

The Plaintiff appears to object to all the recommendations in the Report.  Accordingly, the entire Report is reviewed *de novo*.  *Wilson*, 864 F.2d at 1221.  Upon thorough review of the record and relevant authority, this Court denies the Plaintiff's objections and adopts the Report.

As a threshold matter, this Court must determine what level of protection the Fourth Amendment afforded the Plaintiff when the Defendants approached his vehicle.  "[W]hen it comes to the Fourth Amendment, the home is first among equals . . . ."  *Florida v. Jardines*, 569 U.S. 1, 6 (2013).  At the "very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."  *Silverman v. United States*, 365 U.S. 505, 511 (1961).  By contrast, automobiles enjoy far less Fourth Amendment protection.  *See Collins*, 138 S. Ct. at 1669 (discussing the automobile exception to the warrant requirement).  The automobile exception does not, however, permit law enforcement to conduct warrantless searches of vehicles parked within the curtilage of a home.  *See id.* at 1671.

## A. Curtilage

Curtilage consists of areas "so intimately tied to the home itself that [they] should be placed under the home's 'umbrella' of Fourth Amendment protection."  *United States v. Dunn*, 480 U.S. 294, 301 (1987).  Four factors help determine whether an area falls within the curtilage of a home: (1) "the proximity of the area claimed to be curtilage to the home"; (2) "whether the area is included within an enclosure surrounding the home"; (3) "the nature of the uses to which the area is put"; and (4) "the steps taken by the resident to protect the area from observation by people passing by."  *Id.*

The Plaintiff insists that his truck was parked within the curtilage of the nearby house. (ECF No. 43 at 2.)  The Court disagrees.  Two Fifth Circuit cases are helpful in guiding the Court's

analysis on this issue. *See United States v. Beene*, 818 F.3d 157 (5th Cir. 2016); *United States v. Moffitt*, 233 Fed. App'x 409 (5th Cir. 2007). In *United States v. Beene*, the defendant's vehicle was parked in his driveway roughly five feet from the street, and yet, the Fifth Circuit found that the truck was not parked within the curtilage of the defendant's home. *Id.* at 159, 162. The Fifth Circuit explained:

> [O]nly the driveway's proximity to the residence weighs in favor of a finding that it was part of the curtilage of the home. The driveway was open and could be observed from Greer Street. Although fences encircled part of the driveway, nothing blocked its access or obstructed its view from the street. Finally, neither Beene nor Heard took steps to protect their privacy, such as posting "no trespassing" signs. *Id.* at 162.

In *United States v. Moffitt*, the defendant's yard was surrounded by a chain-link fence, which featured several "no trespassing" signs, and his driveway was directly next to his house. 233 Fed. App'x at 411. Even so, the Fifth Circuit found that the "driveway and the yard in front of [the defendant's] house are not areas so intimately tied to the home that they are protected curtilage." *Id.* Specifically, the Fifth Circuit found that "[the defendant's] driveway and front yard were access areas for visitors to enter and knock on the front door . . . . [The defendant] could not reasonably have expected to keep neighbors, door-to-door salespeople, and trick or treaters from driving or walking to his house and approaching his front door." *Id.* at 411-12. The Fifth Circuit reasoned that if the defendant "has a reasonable expectation that various members of society may enter his property, he should find it equally likely that the police . . . will do so." *Id.* at 412. Moreover, the Fifth Circuit found that the chain-link fence and "no trespassing" signs were insufficient to protect the yard and driveway from observation because the fence was see-through and left the enclosed area open to public view. *Id.*

12

The facts in this case are analogous to the facts in *Beene* and *Moffitt* in several respects. Just as in *Beene* and *Moffitt*, the Plaintiff parked his truck in an area that was "open and could be observed from" surrounding streets. *Beene*, 818 F.3d at 162; *accord Moffitt*, 233 Fed. App'x at 411. The Campirano body camera footage shows that "nothing blocked access [to] or obstructed" the Plaintiff's truck and its visibility from the surrounding streets. *Beene*, 818 F.3d at 162. The footage even shows a school bus passing along a road overlooking the area where the Plaintiff parked his truck. (ECF No. 38.) Moreover, the video gives no indication that there were any fences, walls, canopies, "no trespassing" signs, or other efforts to conceal the area where the Plaintiff parked. *Id.* Based on the distance between the truck and the house, the lack of enclosure surrounding the house, the public-facing nature of the area where the truck was parked, and the lack of any steps taken to protect that area "from observation by people passing by," this Court finds that no reasonable factfinder could conclude that the truck was parked within the curtilage of the house. *Dunn*, 480 U.S. at 301. Thus, even if the Plaintiff could establish a privacy interest in the house, that interest did not extend to his truck.

The evidence shows that the Plaintiff parked in an "open field" rather than parking his truck within the house's curtilage. *See Beene*, 818 F.3d at 162-63. The Fourth Amendment does not protect people from official searches characterized as "sights seen in 'the open fields.'" *Husband v. Bryan*, 946 F.2d 27, 29 (5th Cir. 1991) (quoting *Air Pollution Variance Bd. of Colo. V. Western Alfalfa Corp.*, 416 U.S. 861, 865 (1974)). Because the Plaintiff parked in an open field, the defendants were free to enter the property, approach his vehicle, and inspect anything in plain view. *See United States v. Pace*, 955 F.2d 270, 275 (5th Cir. 1992); *see also United States v. Ramirez*, 145 Fed. App'x 915, 921 (5th Cir. 2005) ("We and other courts have held that if the

agents are standing in an open field when they view the alleged contraband, the Fourth Amendment is not implicated.")

## B. Warrantless Seizure

"Warrantless searches and seizures are 'per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).   The Fourth Amendment recognizes three different types of warrantless encounters with law enforcement. *United States v. Massi,* 761 F.3d 512, 520 (5th Cir. 2014).   The first is a consensual encounter, which involves "no coercion or detention." *Id.* It "does not implicate the [F]ourth [A]mendment" or require any level of particularized suspicion. *Id.* (quoting *United States v. Zukas*, 843 F.2d 179, 181 (1988)).

Police questioning generally falls outside Fourth Amendment protection. *United States v. Chavez*, 281 F.3d 479, 483 (5th Cir. 2002).   Police do not violate the Fourth Amendment "'by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen . . . .'" *United States v. Flowers*, 6 F.4th 651, 655 (5th Cir. 2021) (quoting *Florida v. Royer*, 460 U.S. 491, 497 (1983)).

The second is an investigatory stop, where an officer, without offending the Fourth Amendment, may briefly detain an individual for further investigation if "a law enforcement officer can point to specific and articulable facts that lead him to reasonably suspect that a particular person is committing, or is about to commit, a crime . . . ." *Hill*, 752 F.3d at 1033 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).   Known as a *Terry* stop, the detention/seizure "must be temporary and last no longer than is necessary to effectuate the purpose of the stop," unless

probable cause or "further reasonable suspicion, supported by articulable facts, emerges." *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (en banc). Under *Terry*, the legality of the stop is a dual inquiry: (1) "whether the officer's action was justified at its inception," and (2) whether the officer's subsequent actions were "reasonably related in scope to the circumstances that justified the interference in the first place." *Terry*, 392 U.S. at 19-20.

The third type of encounter is an arrest, which requires an officer to have probable cause to believe that the suspect committed a crime in the officer's presence. *Cf. Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) ("The constitutional claim of false arrest requires a showing of no probable cause."). "Probable cause justifying an arrest 'means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Hogan v. Cunningham*, 722 F.3d 725, 731 (5th Cir. 2013) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001). "Police officers who 'reasonably but mistakenly conclude that probable cause is present' are entitled to qualified immunity." *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Probable cause may be for *any* crime and is not limited to the crime that the officers subjectively considered at the time they perform an arrest. *Arizmendi v. Gabbert*, 919 F.3d 891, 903 (5th Cir. 2019) ("[I]n warrantless arrests, there is no threat to a citizen's Fourth Amendment rights where the officer had probable cause to arrest, albeit not for the offense he chose to charge.").

1. Initial Seizure

The Plaintiff makes several objections to the Report's recommendations about when the police initiated a Fourth Amendment seizure.  First, he contends that contrary to the Report's suggestion that he and Bermea had a consensual encounter, the Plaintiff intended to terminate the encounter, and Bermea would not leave despite knowing that Bermea was trespassing. (ECF No. 43 at 4.)  Second, he contends that he could decline to comply with Campirano's commands because, as the Report states, a seizure started when Campirano grabbed him, and a person stopped need not answer questions or be arrested for failing to answer questions. (*Id.* at 5-6, 8.)  Third, he contends that there is a factual dispute over whether he was "an immediate threat" to Bermea's and Campirano's safety because he had turned a light on, was not intoxicated, and made his hands visible. (*Id.* at 6.)  Fourth, he contends that Campirano should have known that Campirano was on private property and that the Plaintiff had no need to provide identification or proof of residence. (*Id.*)  Fifth, he asserts that Campirano's seizure of the Plaintiff violated the Fourth Amendment because Campirano was on the scene for only a few seconds and did not know of any crime. (*Id.*)  Finally, he contends that there is a factual issue over whether Campirano twice telling the Plaintiff to leave the vehicle by saying "please" is a lawful order or a request. (*Id.* at 10.)

"Because a seizure under the Fourth Amendment must be justified at its inception, the general starting point in assessing a Fourth Amendment claim is determining if and when a seizure under the Fourth Amendment occurred." *Flowers*, 6 F.4th at 655 (citation and quotation marks omitted).  "In the Fourth Amendment context, 'a seizure occurs when, under the totality of the circumstances, a reasonable person would have thought he was not free to leave.'" *Kelson v. Clark*, 1 F.4th 411, 417 (5th Cir. 2021) (quoting *Keller v. Fleming*, 952 F.3d 216, 222 (5th Cir. 2020)).  The reasonable person test "is necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that

conduct in isolation." *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988).  The test assumes an innocent person. *Florida v. Bostick*, 501 U.S. 429, 438 (1991).

"Physical force is not required to effectuate a seizure; however, absent physical force, *submission* to the assertion of authority is necessary." *Kelson*, 1 F.4th at 417 (internal quotation marks omitted) (quoting *McLin v. Ard*, 866 F.3d 682, 691 (5th Cir. 2017)) (emphasis added). "When a person has no desire to leave for reasons unrelated to the police presence, the coercive effect of the encounter can be measured better by asking whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Flowers*, 6 F4th at 655 (quotation marks omitted); *see also I.N.S. v. Delgado*, 466 U.S. 210, 218 (1984).  Shows of authority include emergency lights behind a detainee's vehicle, even if the vehicle is parked, while an officer almost simultaneously orders the detainee to remain in the vehicle, *United States v. Wright*, 57 F.4th 524, 532 (5th Cir. 2023) [*Wright I*] (also stating that "it is not necessary to decide whether solely engaging the emergency lights constituted a seizure"), a commanding tone of voice, *Chavez*, 281 F.3d at 483, physical contact, *id.*, physical obstacles like a roadblock, *United States v. Morris*, 40 F.4th 323, 327 (5th Cir. 2022) (per curiam), and a visual signal to stop. *Id.* at 328. "'[S]eizures have been found when an encounter is precipitated by a show of authority, such as when a siren was used to pull a motorist over; when a motorist stepped out of his camper, with his hands up, in response to an officer's knock on the camper door; or when under other circumstances it was apparent . . . that the individual was not free to ignore the officer and proceed on his way.'" *McLin*, 866 F.3d at 691 (quoting *United States v. Elmore*, 595 F.2d 1036, 1041 (5th Cir. 1979) (internal quotation marks omitted)).

"A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted

seizure, so far as the Fourth Amendment is concerned." *Brendlin v. California*, 551 U.S. 249, 255, 262 (2007) (citation omitted) (also stating that a passenger remaining in a vehicle constitutes submission); *Carroll*, 800 F.3d at 170 (finding no seizure because the detainee did not submit to the officer's show of authority). "Determining the time at which an individual submits to authority 'depends on what a person was doing before the show of authority: a fleeing man is not seized until he is physically overpowered, but one sitting in a chair may submit to authority by not getting up to run away.'" *Wright I*, 57 F.4th at 532. "[I]t is the nature of the interaction, and not its length, that matters." *United States v. Baldwin*, 496 F.3d 215, 219 (5th Cir. 2007).

"[C]ompliance with an officer's commands constitutes submission to authority." *Wright I*, 57 F.4th at 532-33 (finding submission to a show of authority because (1) although the detainee disregarded the officer's commands that he remain in the vehicle, he faced the officer and calmly told her that he did not do anything; (2) he neither lunged towards the officer nor made threatening or evasive movements; (3) he did not try to flee, and (4) he did not try to end the encounter). "[T]he number of officers present[] and whether the tone or content of questions indicates that 'compliance with the officer's request might be compelled'" are relevant considerations. *Morris*, 40 F.4th at 327; *see also Hill*, 752 F.3d at 1033 (finding a seizure where the officer suspecting a drug crime ordered the detainee to exit the car, to which the detainee complied); *see also United States v. Beck*, 602 F.2d 726, 727-29 (5th Cir. 1979) (finding a seizure because the officers pulled so close to the vehicle that was parked on the side of the road, which had the driver's side door closest to the curb, that they effectively restrained the detainee and his passenger). The Fourth Amendment generally protects no one from police questioning. *Chavez*, 281 F.3d at 483; *see also Flowers*, 6 F4th at 655.

Here, Bermea did not seize the Plaintiff. The video evidence shows that Bermea and the Plaintiff had a conversation in which Bermea, standing near the passenger side window, said that the Plaintiff need not do anything and explained that a call triggered the police response. (ECF No. 38.) The video evidence shows no proof that Bermea made physical contact with the Plaintiff when he arrived at the scene, that Bermea removed his weapon, or that Bermea was otherwise hostile. (*Id.*) The police incident report also suggests that Bermea engaged in conversation with the Plaintiff when he arrived on the scene. (ECF No. 34-1 at 2.) A reasonable person in the Plaintiff's position would not be detained by Bermea because such a person could drive away. *Cf. Beck*, 602 F.2d at 727-29. Therefore, Bermea did not seize the Plaintiff.

On the other hand, Campirano seized the Plaintiff. Campirano made a show of authority when he used a commanding tone of voice to order the Plaintiff to exit the vehicle while gesturing with his hand. (ECF No. 38); *Chavez*, 281 F.3d at 483; *Morris*, 40 F.4th at 328. The Plaintiff, however, did not submit to this show of authority because he refused to exit the vehicle. (ECF No. 38); *Morris*, 40 F.4th at 532-33; *Carroll*, 800 F.3d at 170. Under the reasonable person test, the seizure occurred once Campirano made physical contact with the Plaintiff because the Plaintiff was not then free to leave. (ECF No. 38); *Kelson*, 1 F.4th at 417. Accordingly, Campirano seized the Plaintiff when Campirano made physical contact with him. As a result, the Plaintiff's remaining contentions about seizure are meritless.

2.  Reasonable Suspicion

The Plaintiff raises several objections to the Report's conclusion about reasonable suspicion.[2] First, the Plaintiff contends that Bermea and Campirano cannot point to "'specific and articulable facts'" that the Plaintiff was involved in criminal activity. (ECF No. 43 at 4-5.) Second, the Plaintiff contends that "[a]ny arrest" that Campirano made when he opened the Plaintiff's vehicle's door and grabbed the Plaintiff's hand required specific suspicion of criminal activity to be lawful, and even if an unlawful arrest eventually becomes lawful as a result of the arrestee's resistance, "there is no reason why the officer cannot be held liable for the unlawful part." (Id. at 5.) Third, the Plaintiff contends that Bermea and Campirano lacked a basis to seize him because the alleged offenses (i.e., obedience to officers; resisting arrest; interfering with police duties) were not "in view" as one Texas statute requires. (Id. at 16.) The Plaintiff's objections are nonsensical and not based on existing law.

"Reasonable suspicion exists if the officer can 'point to specific and articulable facts that lead him to reasonably suspect that a particular person is committing, or is about to commit, a crime.'" *McKinney v. United States*, 980 F.3d 485, 490 (5th Cir. 2020) (citation omitted). "It cannot be unparticularized or founded on a mere hunch." *Id.* (citation omitted). "Instead, 'a minimal level of objective justification' is required." *Id.* at 491 (citation omitted). "Observations capable of innocent explanation when considered alone might rise to the level of reasonable suspicion in the aggregate." *Id.* (citation omitted).

"Likewise, an officer can have a reasonable suspicion without ruling out every innocent explanation." *Id.* (citation omitted). Courts "account for the totality of the circumstances in determining whether there was a particularized and objective basis for suspecting legal

---

[2] Although the Plaintiff raises several objections to the reasonable suspicion analysis by referring to various statutes, those objections are misplaced and accordingly addressed in the analysis of the arrest.

wrongdoing." *Id.* (quotation marks and citations omitted). "Therefore, the focal point of [the Court's] analysis is whether the totality of the relevant circumstances that transpired before [the seizure] revealed articulable facts from which an officer could reasonably suspect that [the detainee] had committed, was committing, or was about to commit a criminal offense." *United States v. Monsivais*, 848 F.3d 353, 358 (5th Cir. 2017). "In determining reasonable suspicion, courts must consider the facts in light of the officer's experience." *Flowers*, 6 F.4th at 656. Reasonable suspicion need not be "a particularized suspicion of a particular, specific crime." *United States v. Roper*, 63 F.4th 473, 478-79 (5th Cir. 2023) (quotation marks and citation omitted) (finding reasonable suspicion because the detainee was near the location of a crime after midnight, emerged from a closed-off location, offered information without being asked, and provided "inconsistent and implausible explanations"). Police incident reports can support a finding of reasonable suspicion. *See, e.g.*, Fed. R. Evid. 803(8).

Here, Bermea and Campirano had reasonable suspicion to believe that the Plaintiff committed or was about to commit a crime before the Plaintiff was seized. As to Bermea, he had reasonable suspicion that the Plaintiff drove while drinking or would drive while drinking. First, Bermea noticed the Plaintiff seated in the driver's seat of a parked vehicle with a running engine. (ECF No. 34-1 at 2.) The video evidence also supports this observation, including that Bermea relied on an unspecified call to find the Plaintiff. (ECF No. 38.) Contrary to the Plaintiff's contention, this portion of the police incident report is admissible under hearsay rule exceptions. Second, Bermea reports that he smelled alcohol from the vehicle and that he noticed an open alcoholic beverage near the Plaintiff. (ECF No. 34-1 at 2.) Although the Plaintiff avers that he was not intoxicated that day (ECF No. 36-3 at 1), reasonable suspicion is based on a police officer's observations and need not rule out innocent explanations. *Flowers*, 6 F.4th at 656; *McKinney*, 980

F.3d at 491. The Plaintiff's assertions do not contradict the findings that the officers had reason to believe he was intoxicated and unable to be in control of a vehicle in the Plaintiff's state.

As to Campirano, he had reasonable suspicion that the Plaintiff committed a crime. First, reasonable suspicion may apply to any crime. *Roper*, 63 F.4th at 478-79. Second, according to video evidence, Campirano noticed the Plaintiff seated in the driver's seat of a parked vehicle. (ECF No. 38.) Third, this observation occurred at approximately 6:30 in the morning, when it was still dark outside. (*Id.*) Fourth, according to the video evidence, the property where the Plaintiff was parked appears empty, but was near other properties. (*Id.*; *see also* ECF No. 35.) Fifth, the Plaintiff implicitly confirmed that the property was abandoned because he said that it did not matter whether the property was abandoned. (ECF No. 38.) Sixth and finally, the facts of this case are nearly identical to *Castro*, where the court found reasonable suspicion because the officer who received no suspicious person complaints associated with the property noticed a rental truck with its door open parked in a vacant private lot next to a strip mall at approximately 5:00 in the morning. 2023 WL 2566088, at *1, *10-12. Therefore, Campirano had reasonable suspicion based on his observations, along with collective police knowledge, to believe the Plaintiff had committed or was about to commit a crime.

Contrary to the Plaintiff's contention that reasonable suspicion required compliance with a statute, reasonable suspicion need not be "a particularized suspicion of a particular, specific crime." *Roper*, 63 F.4th at 478-79. Lastly, contrary to the Plaintiff's contentions, Campirano had reasonable suspicion before he even opened the truck door and, as explained below, the arrest was lawful. Thus, Bermea and Campirano had reasonable suspicion to further detain the Plaintiff for further investigation.

        3.  The Arrest

The Plaintiff objects to the Report's recommendation that the Defendants had probable cause to arrest him under three Texas state laws because those laws do not apply to his encounter with the Defendants.   (ECF No. 43 at 8-12.)   Once, again, the Plaintiff's contentions are nonsensical.

Probable cause exists to justify an arrest when the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan*, 443 U.S. at 37.   First, the Report states that the Defendants had probable cause to arrest the Plaintiff for violating Section 542.501 of the Texas Transportation Code.  Tex. Transp. Code Ann. § 542.501.  Section 542.501 provides in relevant part: "A person may not willfully fail or refuse to comply with a lawful order or direction of . . . a police officer . . . ." *Id.*  The Report finds that when the Plaintiff failed to comply with Campirano's "objectively lawful command to exit the vehicle, a reasonable officer could have concluded that there was probable cause to arrest Garcia for violating section 542.501." (ECF No. 40 at 27.)

Video evidence from the scene clearly shows that Campirano commanded the Plaintiff multiple times to step out of the vehicle before physically removing him.  (ECF No. 38.)  As Campirano approached the driver's side door and opened it, he repeatedly ordered the Plaintiff to step out of the vehicle. (*Id.*)  The Plaintiff, however, did not step out of the vehicle. (*Id.*)  Instead, he continued recording the interaction on his cell phone and responded, "I'm not going to step out of the vehicle, sir" and "I'm in my property." (*Id.*)  Campirano asked the Plaintiff whether he had identification to verify the address of the home and gave additional commands to step out of the vehicle. (*Id.*)  The Plaintiff responded, "you are violating my rights" and "I do not have to identify this is my property." (*Id.*)  At this point, Campirano had commanded the Plaintiff to step out of

the vehicle approximately six times. (*Id.*) Campirano stated, "either you come out, or we extract you out" and gave an additional command to step out of the vehicle. (*Id.*) The Plaintiff did not step out, and Campirano physically removed the Plaintiff from the vehicle. (*Id.*) This evidence shows that a reasonable officer could have concluded there was probable cause to place the Plaintiff under arrest for violating Section 542.501.

Despite not stepping out of the vehicle or failing to comprehend Campirano's command, the Plaintiff claims he could not have violated Section 542.501 because he was not parked on a highway. (ECF No. 43 at 9-10.) Specifically, he points to a neighboring provision in the Texas Transportation Code, Section 542.001, that states "[a] provision of this subtitle relating to the operation of a vehicle *applies only to the operation of a vehicle on a highway* unless the provision specifically applies to a different place." Tex. Transp. Code Ann. § 542.001 (emphasis added). This argument is unavailing. Although Section 542.001 applies only to provisions "relating to *the operation of a vehicle*," Section 542.501, "Obedience Required to Police Officers, School Crossing Guards, and Escort Flaggers," does not. *See id.* § 542.001 (emphasis added); *id.* § 542.501; *see also Hedtke v. State*, No. 02-19-00308-CR, 2020 WL 6601600, at *3 (Tex. App. Nov. 12, 2020) ("By its own terms, the section does not apply to a provision that does not relate to driving or otherwise operating a vehicle. Section 542.501 does not relate specifically to the operation of a vehicle; it relates to the order of a police officer."). That is, because Section 542.501 does not concern the operation of vehicles, a person need not be on a highway to violate it. Thus, when the Plaintiff repeatedly failed to comply with Campirano's multiple lawful commands to exit the truck, a reasonable officer could have concluded that there was probable cause to arrest the Plaintiff for violating Section 542.501.

Second, the Report also finds that the Defendants had probable cause to arrest the Plaintiff

for interfering with a peace officer's public duties, in violation of Section 38.15 of the Texas Penal

Code. (ECF No. 40 at 27-28.)  Under Section 38.15, a person commits this offense "if the person

with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with a peace officer

while the peace officer is performing a duty or exercising authority imposed or granted by law."

Tex. Pen. Code § 38.15(a)(1).  Failure to comply with a police officer's instructions can create

probable cause for an arrest for interference with a peace officer's public duties. *See Childers v.

Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017) (collecting cases where courts affirmed convictions of

defendants who failed to comply with an officer's instructions).

Contrary to the Plaintiff's objections, the Defendants have provided evidence that he acted

with "criminal negligence,"[3] as Section 38.15(a) requires.  Specifically, the video evidence shows

the Plaintiff repeatedly pulling away from Campirano's attempts to remove him from the vehicle.

(ECF No. 38.)  In doing so, the Plaintiff "ought to [have been] aware of a substantial and

unjustifiable risk" that his actions would interrupt, disrupt, impede, or otherwise interfere with the

officers' efforts to remove him from the vehicle. Tex. Penal Code Ann. § 6.03.  Texas courts have

upheld public interference convictions in similar circumstances. *See Berrett v. State*, 152 S.W.3d

600, 603-05 (Tex. App. 2004) (affirming a defendant's conviction for public interference where

the defendant repeatedly moved his arm out of the officer's reach to prevent being placed in

---

[3] Section 6.03(d) of the Texas Penal Code defines criminal negligence as follows: "A person acts
with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his
conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable
risk that the circumstances exist or the result will occur. The risk must be of such a nature and
degree that the failure to perceive it constitutes a gross deviation from the standard of care that an
ordinary person would exercise under all the circumstances as viewed from the actor's standpoint."
Tex. Penal Code Ann. § 6.03(d).

handcuffs despite the officer's repeated commands to comply).  Thus, a reasonable officer could find probable cause that the Plaintiff had violated Section 38.15.

Third, the Report concludes that there was probable cause to arrest the Plaintiff for resisting arrest, in violation of Section 38.03(a).  (ECF No. 43 at 28-29.)  This provision makes it a crime for someone to "intentionally prevent[] or obstruct[] a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another."  Tex. Pen. Code Ann. § 38.03(a).  Moreover, "[i]t is no defense to prosecution under this section that the arrest or search was unlawful."  *Id.* § 38.03(b).

The Plaintiff maintains that he did not use force against Campirano because he merely pulled his arm away from him.  (ECF No. 43 at 11.)  He insists, quoting *Sheehan v. State*, that "refusing to cooperate with being arrested does not constitute resisting arrest by force."  201 S.W.3d 820, 823 (Tex. App. 2006).  But *Sheehan* is readily distinguishable from this case.  *Id.*  There, the defendant merely ignored officers' requests to comply and pulled his arms to his chest, "holding them tight, refusing to move them, standing up," and walking away from the officers.  *Id.* at 822.  The court held that "Sheehan's passive non-cooperation" did not constitute a use of force against the officers. *Id.* at 823.  In this case, the video evidence plainly shows Campirano placing his hand on the Plaintiff, who then recoils and frees his arm from the officer's grasp.  (ECF No. 38.)  "[T]he great weight of Texas authority indicates that pulling out of an officer's grasp is sufficient to constitute resisting arrest."  *Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir. 2013); *see also Torres v. State*, 103 S.W.3d 623, 627 (Tex. App. 2003) ("[A] person who uses force in order to shake off an officer's detaining grip, whether by pushing or pulling, may be guilty of resisting arrest under section 38.03.").  Thus, a reasonable officer could find probable cause that the Plaintiff resisted arrest under section 38.03.  Accordingly, the Court finds the Defendants are entitled to summary judgment on the Plaintiff's false arrest claim. **C. Excessive Force**

The Report recommends that this Court find the Plaintiff failed to overcome the Defendants' qualified immunity defense because he did not submit *any* evidence of an injury and because he failed to show that the use of officer force was clearly unreasonable.  (ECF No. 40 at 30.)  The Plaintiff's objections to the Report's findings are scant.  He states "Defendant Bermea[] assisted Defendant Campirano with the unlawful seizure and also without intervening pursuant to Texas CCP."  (ECF No. 43 at 14.)  The Plaintiff then cites to Article 2.1387 of the Texas Code of

Criminal Procedure, "Intervention Required for Excessive Force," and underlines and bolds parts of subsections (a)(1) and (a)(2)(A) & (C). (*Id.* at 14-15.)  At most, the Court can surmise the Plaintiff attempts to insinuate that Defendant Bermea violated the underlined and bolded segments of Article 2.1387.

To overcome the Defendants' qualified immunity defense for a claim of excessive force, the Plaintiff "must show '(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Poole v. City of Shreveport*, 691 F.3d, 624, 628 (5th Cir. 2012) (quoting *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009)).  The injury need not be substantial but must be more than *de minimis*. *Hanks v. Rogers*, 853 F.3d 738, 744-45 (5th Cir. 2017).  The Fifth Circuit has held that minor incidental injuries resulting from the application of handcuffs, such as abrasions or bruising to the hands, wrists, or knees, do not give rise to a constitutional claim for excessive force. *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007) (citing *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001)).  Nor are unspecified problems with asthma or an increase in PTSD symptoms for someone with "hidden susceptibility to psychological trauma" caused by officer conduct considered excessive force. *Brooks v. City of W. Point*, 639 Fed. App'x 986, 990 (5th Cir. 2016). "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville v. Marcantel,* 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Here, the Plaintiff's objections are insufficient.  At no point in any of the Plaintiff's filings does he present evidence of an injury sustained.  For instance, he does not offer medical records, photos, or videos to show he sustained a physical or mental injury.  Nor does he submit any

evidence to show that he lost income or was unable to obtain or maintain employment.  The videos he did submit recapture his encounter with police in which he refused to exit his vehicle after numerous commands from Campirano to do so.  They show Campirano using some amount of force to remove the Plaintiff from his vehicle and placing him under arrest with the assistance of Bermea while the Plaintiff is on the ground.  The officers then move the Plaintiff to a standing position and place him in the back seat of Campirano's police cruiser.  At no point does it appear that the Plaintiff sustained any of the injuries he alleges or any other injury that would rise above the level of *de minimis*.  Because the Plaintiff has no evidence to show he sustained an injury, he cannot overcome the Defendants' qualified immunity defense.  The Court need not find whether the excessiveness of the police force was clearly unreasonable because without establishing an injury, the Plaintiff's claim for excessive force is deficient.  *See Poole*, 691 F.3d at 628. Accordingly, the Court finds the Defendants are entitled to summary judgment for this claim.

**D. Unlawful Search**

The Plaintiff objects to the Report's recommendation to grant summary judgment for his unlawful search claim.  (ECF No. 43 at 14-15.)  The Report states that summary judgment was appropriate because the Defendants conducted a lawful inventory search of the Plaintiff's truck. (ECF No. 40 at 33.)

As part of law enforcement's "community caretaking functions," automobiles may be impounded and the contents inventoried without a search warrant.  *South Dakota v. Opperman*, 428 U.S. 364, 368-70 (1976); *see also United States v. Andrews*, 22 F.3d 1328, 1334 (5th Cir. 1994) ("Inventory searches are excepted from the warrant requirement because they serve these 'caretaking' purposes, and because they are not designed to uncover evidence of criminal activity.").  "Inventory searches protect the vehicle and its contents, safeguard the police against claims of lost property, and protect the police and public from possible danger."  *United States v.*

28

*Prescott*, 599 F.2d 103, 105 (5th Cir. 1979). "Inventories serve three purposes: (1) to protect the owner's property while it is in police custody; (2) to protect the police against claims or disputes over lost or stolen property; and (3) to protect the police or public from potential danger." *United States v. Bullock*, 71 F.3d 171, 177 (5th Cir. 1995).

An inventory search is only a valid exception to the warrant requirement if conducted according to standard regulations and procedures, consistent with the proper purpose of a non-investigative inventory search. *Florida v. Wells*, 495 U.S. 1, 4-5 (1990); *Colorado v. Bertine*, 479 U.S. 367, 375-76 (1987). In other words, "'inventory policies must be adopted which sufficiently limit the discretion of law enforcement officers to prevent inventory searches from becoming evidentiary searches.'" *United States v. Como*, 53 F.3d 87, 92 (5th Cir. 1995) (quoting *Andrews*, 22 F.3d at 1336).

Here, there is no genuine dispute that the Defendants conducted an inventory search of the Plaintiff's vehicle. In his objections, the Plaintiff argues that the Defendants "do not have evidence of a[n] established policy of inventory search or search incident to arrest in connection to the search of plaintiff vehicule [sic] in private property." (ECF No. 43 at 15.) However, in the qualified immunity context, plaintiffs like Mr. Garcia bear the initial burden to raise a genuine dispute as to a violation of a clearly established constitutional right. *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc). The Plaintiff must therefore offer facts disputing that the Defendants conducted a valid inventory search.[4] He has not done so. Nor has he raised any other viable arguments challenging the legality of the search of his vehicle. Consequently, the Plaintiff cannot

---

[4] *See Garcia v. Silva*, No. DR-17-CV-0058-AM/CW, 2021 WL 11702098, at *12 (W.D. Tex. Mar. 30, 2021) ("While [defendant] has not shown that the inventory search was conducted pursuant to any standardized criteria, the Plaintiffs have not alleged, nor shown any facts, that the inventory search was somehow improper.").

overcome the Defendants' qualified immunity defense for his claim of an unlawful search of his vehicle.  The Defendants are thus entitled to summary judgment on this claim.

## E. *Franks* Violation

The Plaintiff contends that the Defendants do not deny or challenge the alleged *Franks* violation, and he reasserts that the Defendants deliberately signed warrant affidavits for the Plaintiff's arrest without evidence or probable cause for DWI, failure to identify, or resisting arrest. (ECF No. 43 at 12-13.)  However, the Plaintiff's arrest was not based upon the affidavit.  As discussed above at length, the Plaintiff was arrested without a prior arrest warrant.  Since the state cases were dismissed, the Plaintiff had no need of a *Franks* hearing.

Generally, an individual's Fourth Amendment rights are violated if an officer, in submitting a probable cause affidavit, includes "a false statement knowingly and intentionally, or with reckless disregard for the truth," and "the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).  "To determine if an allegedly false statement is 'necessary to the finding of probable cause,' the court must consider the affidavit as if those false statements were removed and consider whether the 'remaining content' would still support a probable cause finding." *Garcia*, 47 F.4th at 352.  Qualified immunity is warranted "if the corrected affidavit would have supported a reasonable officer's belief that probable cause existed." *Id.* Here, the Plaintiff's contentions fail because they overlook his burden to show that the Defendants are not entitled to qualified immunity in this context.  The Plaintiff has made no such showing.  Rather, as found above, the undisputed facts show that when the Plaintiff failed to comply with Campirano's lawful command to exit the vehicle, a reasonable officer could have concluded there was probable cause to arrest the Plaintiff for failing to obey a lawful command of a police officer.   Tex. Transp. Code § 542.501.  A reasonable officer could

have also concluded there was probable cause to arrest the Plaintiff for interfering with a peace

officer's public duties and resisting arrest. Tex. Penal Code §§ 38.15(a)(1), .03(a). Accordingly,

the Court finds the Defendants are entitled to summary judgment for this claim.

## F. Failure to Intervene

Although not addressed in the Report, the Plaintiff also appears to allege that Bermea's

failure to intervene while Campirano removed him from the vehicle violated his constitutional

rights. (ECF No. 13 at ¶¶ 28-29). "An officer is liable for failure to intervene when that officer:

(1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the

scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but

nevertheless, (4) chose not to act." *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 343

(5th Cir. 2020). Here, the failure to intervene claim fails because as previously stated, the Plaintiff

established no constitutional violations. Therefore, the Court finds that the Defendants are entitled

to summary judgment on this claim. Accordingly, the Defendants are entitled to qualified

immunity on all the Plaintiff's federal claims.[5]

### V. CONCLUSION

For the reasons set forth above, it is hereby **ORDERED** that the Report and

Recommendation (ECF No. 40) is **ADOPTED** and **APPROVED**. Accordingly, the Defendant's

---

[5] The Report is silent as to the Plaintiff's potential state law claims. (ECF No. 40.) To the extent the Plaintiff appears to allege battery, assault, false imprisonment, false arrest, or any other tort under Texas law *(e.g.,* ECF No. 13 at ¶¶ 6, 25, 31), the Court declines to exercise supplemental jurisdiction. *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 231-232 (5th Cir. 2016) ("Generally, whether a court has subject-matter jurisdiction over a claim is distinct from whether a court chooses to exercise that jurisdiction. With respect to supplemental jurisdiction in particular, a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise. A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." (quotation marks and footnotes omitted)).

Motion for Summary Judgment (ECF No. 4) is **GRANTED**.  It is further **ORDERED** that the

Clerk of Court shall administratively close this action.

     SIGNED and ENTERED on this 2nd day of October 2023.

 

ALIA MOSES
Chief United States District Judge